IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FREIGHT DRIVERS AND HELPERS LOCAL UNION NO. 557 PENSION FUND, By its Trustee, William Alexander *Plaintiff*, v. PENSKE LOGISTICS LLC, *et al.*, *Defendants*. | Civil Action No. ELH-12-2376 |

## MEMORANDUM OPINION

This is an action under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381-1453. Suit was "brought on behalf of the Freight Drivers and Helpers Local Union No. 557 Pension Fund" (the "Fund"), a multiemployer pension plan, "by its Trustee, William Alexander" (collectively, "plaintiff"). *See* Complaint, Caption & ¶ 1 (ECF 1). Seeking to vacate and/or modify an arbitration award, pursuant to 29 U.S.C. § 1401(b)(2), plaintiff challenges the arbitrator's dismissal of the Fund's claim for "withdrawal liability," lodged against two contributing employers, Penske Logistics, LLC ("Penske Logistics") and Penske Truck Leasing Co., LP ("Penske Leasing") (collectively, "Penske"), defendants. Compl. ¶ 1.

Defendants moved to dismiss for lack of jurisdiction ("Motion," ECF 5), pursuant to Fed. R. Civ. P. 12(b)(1), and filed a supporting memorandum ("Memo, ECF 5-1), asserting that plaintiff lacks statutory standing under ERISA and the MPPAA. Specifically, defendants argue that an action under 29 U.S.C. § 1401(b)(2) to "enforce, vacate or modify" an arbitration award may only be brought by the "plan sponsor" or the employer that were parties to the arbitration.

Because the MPPAA defines "plan sponsor" as, in pertinent part, a plan's "joint board of trustees," 29 U.S.C. § 1300(a)(10)(A), and the joint board of trustees did not file suit on behalf of the Fund, Penske claims that plaintiff lacks statutory standing.

The Motion has been fully briefed,[1] and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion, without prejudice to plaintiff's right to amend.

## I. Statutory Background

ERISA provides a "comprehensive and reticulated" statutory framework for the administration and regulation of employee pension plans. *Massachusetts v. Morash*, 490 U.S. 107, 113 (1989). Its regulatory scheme is guided by a specific purpose:

> "[T]o ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in [them] . . . . Congress wanted to guarantee that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he will actually receive it."

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 607 (1993) (quoting *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 214 (1986)) (alterations in *Concrete Pipe*). Among those pension plans subject to ERISA are "multiemployer plans," like the Fund, "to which more than one employer contributes," which are "maintained to fulfill the terms of collective-bargaining agreements." *Concrete Pipe*, 508 U.S. at 606; *see* 29 U.S.C. § 1301(a)(3) (defining "multiemployer plan").

As originally enacted, ERISA generated a peculiar incentive for employers that contributed to multiemployer plans. Specifically, the withdrawal of one employer from a

_____

[1] Plaintiff opposed the motion ("Opposition" or "Opp.," ECF 11), and Penske replied ("Reply," ECF 12).

multiemployer plan reduced a plan's "contribution base." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 374 (4th Cir. 2006). To compensate for the loss, the remaining employers were required to increase their "contribution rate." *Id.* Thus, "[a]s employers withdrew, the rising costs of continued participation in multiemployer plans increased the incentives for further withdrawals." *Id.* This, in turn, jeopardized the financial health of multiemployer plans. *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722 (1984).

To reduce the risk of employer withdrawals, Congress amended ERISA through the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, *et seq.* Under the MPPAA, an employer that withdraws from a multiemployer plan "incurs 'withdrawal liability' in the form of 'a fixed and certain debt to the pension plan.'" *Concrete Pipe*, 508 U.S. at 609 (quoting *R.A. Gray*, 467 U.S. at 725). The amount is calculated according to various statutory provisions which are not at issue here. *See generally Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 417-19 (1995) (explaining MPPAA's rules for calculating withdrawal liability). Generally speaking, "[a]n employer's withdrawal liability is its 'proportionate share of the plan's unfunded vested benefits.'" *Concrete Pipe*, 508 U.S. at 609 (citing 29 U.S.C §§ 1381, 1391); *accord BES Servs.*, 469 F.3d at 374.

The "plan sponsor" of a multiemployer plan is charged with determining, providing notification of, and collecting an employer's withdrawal liability. *See* 29 U.S.C. §§ 1382, 1399(b); *see also Concrete Pipe*, 508 U.S. at 610. With respect to a multiemployer plan, the "plan sponsor" is defined as the "joint board of trustees" or, "if the plan has no joint board of trustees, the plan administrator." 29 U.S.C. § 1301(10); *see, e.g., Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Berbar of Cal., Inc.*, 522 U.S. 192, 197 (1997) (explaining that

ERISA "places the calculation burden on the plan's trustees," and that "[t]he trustees must set an installment schedule and demand payment").

An employer may challenge a plan sponsor's determination of withdrawal liability. *See* 29 U.S.C. § 1399(b)(2). Notably, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan" concerning withdrawal liability must be "resolved through arbitration." 29 U.S.C. § 1401(a)(1); *see Concrete Pipe*, 508 U.S. at 611; *BES Servs.*, 469 F.3d at 375. In such an arbitration, any determination made by the plan sponsor as to withdrawal liability is "presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." 29 U.S.C. § 1401(a)(3)(A).

Judicial review of the arbitrator's decision is available to "any party thereto." 29 U.S.C. § 1401(b)(2). Specifically, 29 U.S.C. § 1401(b)(2), titled, in pertinent part, "civil action subsequent to arbitration award," provides (emphasis added):

> Upon completion of the arbitration proceedings in favor of one of the parties, *any party thereto* may bring an action, no later than 30 days after the issuance of an arbitrator's award, in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award.

According to regulations promulgated by the Pension Benefit Guaranty Corporation ("PBGC") to implement ERISA's provisions on arbitration of disputes concerning withdrawal liability, "[p]arty or parties means the employer and the plan sponsor involved in a withdrawal liability dispute." 29 C.F.R. § 4221.2; *see* 29 U.S.C. § 1302(b)(3) (granting regulatory authority to PBGC); 29 C.F.R. § 4221.1(a) ("The purpose of this part is to establish procedures for the arbitration, pursuant to section 4221 of ERISA [29 U.S.C. § 1401], of withdrawal liability disputes . . . .").

As indicated, an action under 29 U.S.C. § 1401(b)(2) must be brought "in accordance with" 29 U.S.C. § 1451, titled "Civil actions." Subsection (a) is titled "Persons entitled to maintain actions." Pertinent here, 29 U.S.C. § 1451(a)(1) provides:

> A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both.

Additionally, 29 U.S.C. § 1451 includes several provisions relevant to filing a lawsuit, such as a jurisdictional provision, *id.* § 1451(c); provisions governing venue and service of process, *id.* § 1451(d), (g); and a statute of limitations, *id.* § 1451(d). It also addresses an employer's failure "to make any withdrawal liability payment within the time prescribed," *id.* § 1451(b), and provides for an award of costs and expenses to the prevailing party, *id.* § 1451(e).

## II. Factual Background

The Fund is an "employee pension benefit plan," as defined in 29 U.S.C. § 1002(2), and a "multiemployer plan," as defined in 29 U.S.C. §§ 1002(37) and 1301(a)(3). Compl. ¶ 4. It is also a "trucking industry fund," pursuant to 29 U.S.C. § 1383, meaning that "substantially all of the contributions required under the plan are made by employers primarily engaged in the long and short haul trucking industry." *See* Compl. ¶ 4.

Penske, a contributing employer, operates "trucking services" and "own[s] subsidiary businesses." *Id.* ¶ 6. On March 19, 1996, Penske acquired Leaseway Motorcar Transport Co. ("Leaseway") as a "wholly owned subsidiary." *Id.* ¶ 7. According to plaintiff, Leaseway was "obligated to contribute to the Fund pursuant to a collective bargaining agreement." *Id.* Thereafter, at an unspecified date, Penske sold Leaseway to Performance Transportation Services, "a wholly owned subsidiary" of Performance Logistics Group. *Id.* ¶ 8.

According to the Complaint, Leaseway experienced two "partial withdrawals" from the Fund, in December 2004 and December 2005, respectively, and a "complete withdrawal" in December 2006. *Id.* ¶¶ 9-11. "[T]here is a partial withdrawal by an employer from a plan on the last day of a plan year if for such plan year (1) there is a 70-percent contribution decline, or (2) there is a partial cessation of the employer's contribution obligation." 29 U.S.C. § 1385. Complete withdrawal occurs when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383.

The Fund and Penske disputed whether Penske was liable for Leaseway's withdrawals, and the parties initiated arbitration pursuant to 29 U.S.C. § 1401. Compl. ¶¶ 13-14. The arbitrations for all three withdrawals were consolidated into a single proceeding. *Id.* ¶ 17. The arbitrator requested briefing from the parties on a "trucking industry exemption" to the assessment of complete withdrawal liability. *Id.* ¶ 18. On July 13, 2012, the arbitrator found the trucking industry exemption applicable and dismissed the Fund's claim against Penske for complete withdrawal liability. *Id.* ¶¶ 19-20.[2]

Thereafter, Trustee Alexander initiated this action "on behalf of" the Fund, pursuant to 29 U.S.C. § 1401(b)(2), seeking an "order vacating and/or modifying [the] arbitration award issued . . . on July 13, 2012." Compl. ¶ 1. According to plaintiff, the arbitrator erred in finding that "Penske qualified for the application of the trucking industry exemption," *id.* ¶ 23, and that "no complete withdrawal liability could be assessed against Penske." *Id.* ¶ 24.

---

[2] A copy of the arbitrator's decision—which the parties refer to as the arbitration award— is attached as Exhibit 1 to the Complaint. *See* ECF 1-3 (the "Arbitration Award"). The Arbitration Award did not address the merits of the Fund's claims relating to Leaseway's partial withdrawals. According to the Complaint, they are awaiting resolution. *See* Compl. ¶ 19.

### III.  Discussion

*A.  The Parties' Contentions*

As noted, Penske asserts that plaintiff lacks statutory standing to bring this action. According to Penske, 29 U.S.C. § 1401(b)(2) only authorizes a "party" to an arbitration concerning withdrawal liability to file suit to vacate or modify the arbitration award.  *See* Memo at 2.  In view of ERISA's statutory language and the PBGC's regulations, Penske asserts that the term "party" in §1401(b)(2) means the "plan sponsor" or employer involved in arbitrating such a dispute.  *See* Memo at 3.  Because the "plan sponsor" of a multiemployer plan is defined as its "joint board of trustees," 29 U.S.C. § 1301(10), Penske insists that only the Fund's Board of Trustees has statutory standing to file suit on the Fund's behalf in this case.  *See* Memo at 4-5. As the Fund's Board of Trustees did not do so, Penske contends that plaintiff lacks statutory standing.  *See* Memo at 5-6.

Plaintiff counters that 29 U.S.C. § 1401(b)(2) must be read in conjunction with 29 U.S.C. § 1451(a)(1), which empowers, *inter alia*, a "plan fiduciary . . . who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan" to bring suit for "appropriate legal or equitable relief."  *See* Opp. at 3.  According to plaintiff, Trustee Alexander is a "fiduciary of the Fund," and is therefore "expressly empowered . . . to initiate this action."  Opp. at 3.  In this vein, plaintiff also argues that Penske's position is contrary to several judicial decisions, *see id.* at 4-7, discussed, *infra*.

Plaintiff also asserts that, even if standing to appeal an arbitrator's decision is restricted to a party to the arbitration, Trustee Alexander is "properly authorized to bring the suit on behalf of the Fund's plan sponsor," in accordance with the Fund's "Restated Agreement and Declaration of Trust" (the "Trust Agreement," Motion Exh. 7).  *See* Opp. at 8-9. Further, it claims that the

Arbitration Award does not name the Fund's Board of Trustees as a party to the arbitration, and therefore the interpretation urged by Penske "would deprive the Fund of its right to have the arbitrator's award reviewed by a court." *Id.* at 6-7.

### B. Standard of Review

Defendants filed their Motion under Fed. R. Civ. P. 12(b)(1), challenging subject matter jurisdiction based on standing. To be sure, "standing . . . is generally associated with Civil Procedure Rule 12(b)(1) pertaining to subject matter jurisdiction." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011). "'Article III gives federal courts jurisdiction only over cases and controversies,' and standing is 'an integral component of the case or controversy requirement.'" *Id.* (quoting *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006)). Thus, "defendants may aptly challenge its existence by a motion to dismiss for lack of jurisdiction over the subject matter, pursuant to Federal Rule of Civil Procedure 12(b)(1)." *Miller v. Pac. Shore Funding,* 224 F. Supp. 2d 977, 994 (D. Md. 2002) (citing *Marshall v. Meadows,* 105 F.3d 904, 905-06 (4th Cir. 1997)); *see also McInnes v. Lord Baltimore Empl. Ret. Income Account Plan,* 823 F. Supp. 2d 360, (D. Md. 2011) (noting that "standing is an element of subject matter jurisdiction").

However, defendants' Motion does not present a jurisdictional issue appropriate for resolution under Rule 12(b)(1). As noted, Penske asserts that the Fund, through a single trustee, does not fall within the class of parties authorized by ERISA to bring an action to enforce, vacate, or modify an arbitration award under 29 U.S.C. § 1401(b)(2). This is a challenge to plaintiff's statutory standing, "a concept distinct from Article III and prudential standing." *See CGM*, 664 F.3d at 52; *see, e.g.*, *In re Mutual Funds Inv. Litig.*, 529 F.3d 207, 213-16 (4th Cir. 2008) (examining "statutory standing" under ERISA separately from Article III standing).

"Statutory standing 'applies only to legislatively-created causes of action' and concerns 'whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action.'"  *CGM*, 664 F.3d at 52 (quoting Radha A. Pathak, *Statutory Standing and the Tyranny of Labels*, 62 Okla. L. Rev. 89, 91 (2009)).  A plaintiff has statutory standing if "the plaintiff 'is a member of the class given authority by a statute to bring suit.'"  *CGM*, 664 F.3d at 52 (quoting *In re Mutual Funds*, 529 F.3d at 216); *see, e.g.*, *In re Mutual Funds*, 529 F.3d at 213-16 (finding that plaintiffs had "statutory standing" under § 502(a)(2) of ERISA).  In *CGM*, the Fourth Circuit explained the distinction:

> "Though all are termed 'standing,' the differences between statutory, constitutional, and prudential standing are important.  Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing.  Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded this injured plaintiff the right to sue the defendant to redress his injury."

664 F.3d at 52 (quoting *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 295 (3d Cir. 2007)).

According to the Fourth Circuit, "'[a] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim,'" and should be analyzed as a motion under Fed. R. Civ. P. 12(b)(6).  *CGM*, 664 F.3d at 52 (quoting *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011)); *see also Vaughn v. Bay Environ. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009) ("[A] dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction.").  Therefore, I will consider plaintiff's motion under Rule 12(b)(6), not Rule 12(b)(1).  *See, e.g.*, *Hawes v. Network Solutions, Inc.*, 337 F.3d 377, 383 (4th Cir. 2003) (explaining that a district court should consider a motion to dismiss improperly filed under Rule 12(b)(1), when predicated on non-jurisdictional grounds, as a motion under 12(b)(6)); *see also Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 249 (1951) ("As frequently

happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action.").

Ordinarily, in deciding a Rule 12(b)(6) motion, a court "is not to consider matters outside the pleadings or resolve factual disputes." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Here, however, both parties submitted extrinsic materials based on the assumption that the Motion would be considered under Rule 12(b)(1). *See* Memo at 2 ("The Court may review materials outside of the record on motions to dismiss brought under Rule 12(b)(1)."); Opp. at 1-2 ("When considering whether subject-matter jurisdiction exists, the court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."). For example, both parties rely on the Trust Agreement. Additionally, defendants rely on their notice of dispute and demand for arbitration under 29 U.S.C. § 1401(a), which they sent to the Fund's Board of Trustees to contest the Board's assessment of withdrawal liability. *See* Decl. of Mark E. Furlane, Defense Counsel, Exh. 1 ("Notice," ECF 12-1).

Generally, if a court considers material outside of the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). But, without conversion to a summary judgment motion, a court may "consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (internal citation omitted) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 606, 618 (4th Cir. 1999)); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). This exception is justified on the ground that "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is

dissipated [w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Am. Chiropractic*, 367 F.3d at 234 (alterations in original) (internal quotation marks omitted) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

Accordingly, I will consider the Trust Agreement and the Notice. In this regard, I note that neither side has requested an opportunity for discovery with respect to these documents.

As to the Trust Agreement, it is implicitly referenced in the Complaint, *see* Compl. ¶¶ 4-5 (alleging that Fund qualifies as multiemployer pension plan under ERISA), and reflects that the Fund is governed by ERISA's statutory scheme. *See, e.g.*, *White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 986 (7th Cir. 2013) ("We can . . . consider ERISA plan documents that were attached to the complaint or referenced in it without converting the motion to one for summary judgment."); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) ("Plaintiff references the 'plan' numerous times in his complaint. Although plaintiff maintains that the complaint referred only to the 'plan' as an entity and not to the 'plan documents,' his claims are based on rights under the plans which are controlled by the plans' provisions as described in the plan documents. Thus, we will consider the plan documents along with the complaint, because they were incorporated through reference to the plaintiff's rights under the plans, and they are central to plaintiff's claims."); *Kling v. Fidelity Mgmt. Trust Corp.*, 270 F. Supp. 2d 121, 127-28 (D. Mass. 2003) (considering "plan documents" on motion to dismiss, although "complaint d[id] not refer to these [pension plan] documents except in the broadest of terms, because "ERISA's provisions relating to fiduciary duty make explicit and repeated reference to plan documents"). Further, its authenticity is not controverted.

Similarly, the Notice is clearly referenced in the Complaint. *See* Compl. ¶¶ 14-16 (discussing Penske's dispute of withdrawal liability and notices and demands to initiate arbitration). Nor is its authenticity disputed.

C. *Standing Under § 1401(b)(2)*

For the reasons discussed below, I conclude that standing to bring an action to modify or vacate an arbitration award is governed by 29 U.S.C. § 1401(b)(2), and not 29 U.S.C. § 1451(a)(1). Therefore, only a "plan sponsor," defined as a plan's joint board of trustees, has statutory standing in this case. But, the Fund's Board of Trustees did not file this suit, and there is no evidence that the Board delegated authority to Trustee Alexander to file suit on the Fund's behalf. Accordingly, plaintiff lacks statutory standing.

1.

The parties dispute whether 29 U.S.C. § 1401 or 29 U.S.C. § 1451 defines the class of persons entitled to bring an action to enforce, vacate, or modify an arbitration award. The parties did not bring any judicial decision addressing this issue to my attention, nor have I uncovered any. The dispute presents a question of statutory interpretation. In *CGM*, the Court said: "In a case where the question is 'whether Congress intended to confer standing on a litigant like [the one at bar] to bring an action under [the statute at issue],' '[o]ur task is essentially one of statutory construction.'" 664 F.3d at 52-53 (quoting *Washington-Dulles Transp., Ltd. v. Metro. Washington Airports Auth.*, 263 F.3d 371, 377 (4th Cir. 2001)) (alterations in *CGM*).

Statutory interpretation "begin[s] with the text and structure of the statute." *Morgan v. Sebelius,* 694 F.3d 535, 537 (4th Cir. 2012) (citation omitted). When interpreting a statute, a court should "'give the terms their ordinary, contemporary, common meaning, absent an indication Congress intended [the terms] to bear some different import.'" *In re Total Realty*

*Mgmt., LLC,* 706 F.3d 245, 251 (4th Cir. 2013) (quoting *Crespo v. Holder,* 631 F.3d 130, 133 (4th Cir. 2011)).  In doing so, a court will "not only look to the language itself, but also 'the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* (quoting *Holland v. Big River Minerals Corp.,* 181 F.3d 597, 603 (4th Cir. 1999)).

If the statutory language is ambiguous, it is appropriate to "'turn to other evidence to interpret the meaning of the provision,' interpreting provisions harmoniously, where possible, or by reference to the legislative history, and always with the goal of ascertaining congressional intent." *Johnson v. Zimmer,* 686 F.3d 224, 235 (4th Cir. 2012) (quoting *New Cingular Wireless PCS, LLC v. Finley,* 674 F.3d 225, 249 (4th Cir. 2012)).  Additionally "statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calverty Cnty.,* 401 F.3d 274, 280 (4th Cir. 2005).

The plain meaning of the statutory language strongly favors Penske's position.  As noted, the MPPAA requires arbitration of withdrawal liability disputes between an "employer" and a "plan sponsor."  *See* 29 U.S.C. § 1401(a)(1).  Section 1401(b)(2) provides that an action to enforce, vacate, or modify the arbitration award may be brought by "any party thereto."  Reading these two provisions together, the plan sponsor and the employer are, by definition, the only parties to arbitration under 29 U.S.C. § 1401, and thus only they may bring an action to enforce, vacate, or modify the resulting award.

This interpretation of the statute is supported by the PBGC's implementing regulations. With respect to arbitration of withdrawal liability disputes, PBGC regulations provide: "Party or parties means the employer and the plan sponsor involved in a withdrawal liability dispute."  29 C.F.R. § 4221.2.  This Court owes deference to the regulations.  *See Beck v. PACE Int'l Union*,

551 U.S. 96, 104 (2007) ("We have traditionally deferred to the PBGC when interpreting ERISA, for 'to attempt to answer these questions without the views of the agencies responsible for enforcing ERISA, would be to embar[k] upon a voyage without a compass.'") (quoting *Mead Corp. v. Tilley*, 490 U.S. 714, 722, 725-726 (1989)); *Pension Benefit Gaur. Corp. v. LTV Corp.*, 496 U.S. 633, 647-48 (1990) (deferring to PBGC's interpretation of ERISA under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)). The plain statutory language, combined with the PBGC's implementing regulations, lead to the conclusion that only the "plan sponsor" and "employer" involved in the arbitration may bring an action to enforce, vacate, or modify the resulting award.

To be sure, § 1401(b)(2) states that any such action must be brought "in accordance with" § 1451. Section 1451 provides, *inter alia*, that "[a] plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan . . . may bring an action for appropriate legal or equitable relief." 29 U.S.C. § 1451(a). But, the phrase "in accordance with" does not modify the statutory language indicating *who* may bring an action under § 1401(b)(2). Rather, it pertains to the manner in which the § 1401(b)(2) action is initiated, *i.e.*, the *how*. In other words, § 1401(b)(2) incorporates the procedural requirements set forth in § 1451, such as the provisions governing venue and service of process. *See id.* § 1451(d), (g).

Plaintiff relies on § 1451(a), pertaining generally to civil actions, as opposed to § 1401(b)(2), which specifically addresses actions to enforce, vacate, or modify an arbitration award. This is contrary to the well established principle of statutory interpretation that "'the specific governs the general.'" *Air Line Pilots Ass'n, Int'l v. U.S. Airways Grp., Inc.*, 609 F.3d 338, 344 (4th Cir. 2010) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384

(1992)); *see, e.g.*, *S. Carolina Dep't of Health & Envtl. Control v. Commerce & Indus. Ins. Co.*, 372 F.3d 245, 258 (4th Cir. 2004) ("Pursuant to elementary principles of statutory construction, unless the legislature has indicated that it intends otherwise, a specific statutory provision controls a more general one.").  Indeed, "[h]owever inclusive may be the general language of a statute, it 'will not be held to apply to a matter specifically dealt with in another part of the same enactment.'"  *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 657 (4th Cir. 1996) (quoting *Clifford F. MacEvoy Co. v. United States,* 322 U.S. 102, 107 (1944)).

This principle is "most frequently applied to statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission.  To eliminate the contradiction, the specific provision is construed as an exception to the general one."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, ___ U.S. ___, 132 S. Ct. 2065, 2071 (2012).  It also applies where "a general authorization and a more limited, specific authorization exist side-by-side.  There the canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one, 'violat[ing] the cardinal rule that, if possible, effect shall be given to every clause and part of a statute.'"  *Id.* at 2071 (quoting *D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208 (1932)); *accord Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996) ("This Court has understood the present canon ('the specific governs the general') as a warning against applying a general provision when doing so would undermine limitations created by a more specific provision.").

This principle "'applies with special force with regard to a reticulated statute such as ERISA,'" *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 657 (4th Cir. 1996) (quoting *Bigger v. Am. Commercial Lines,* 862 F.2d 1341, 1344 (8th Cir. 1988)), with which courts are "especially 'reluctant to tamper.'"  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209

(2002) (citation omitted).  And, it applies sensibly here.  Taken to its logical conclusion, plaintiff's proffered interpretation would permit any "plan fiduciary, employer, plan participant, or beneficiary . . . adversely affected" by the result of arbitration to file an action to vacate or modify the award, even if they were not involved in the dispute.  *See* 29 U.S.C. § 1451(a)(1).  This would contradict and undermine the limitation inherent in the phrase "any party *thereto*," which clearly refers to the plan sponsor and the employer involved in the arbitration.  Congress could have empowered a wide class of parties to file suit regarding an arbitration award, even if they were not a party thereto.  It did not do so.

Furthermore, plaintiff's position conflicts with a core purpose of the MPPAA: "[T]o shore up the financial stability of multiemployer pension plans."  *BES Servs.*, *supra*, 469 F.3d at 374.  *BES Services* is instructive.  In that case, the Fourth Circuit addressed whether an employer's claim to reductions in withdrawal liability, authorized by 29 U.S.C. § 1405, must be arbitrated under § 1401(a)(1).  *See* 469 F.3d at 372.  Although § 1401(a)(1) requires arbitration of disputes as to a determination of withdrawal liability "made under sections 1381 through 1399," it makes no direct reference to § 1405.  *See* 469 F.3d at 373.  Nonetheless, § 1381, which "creates withdrawal liability and establishes its amount," includes a direct reference to § 1405.  *BES Servs.*, 469 F.3d at 373.  The Court therefore concluded that disputes over § 1405 reductions fell within the scope of mandatory arbitration for disputed withdrawal liability determinations "made under" § 1381.  *See id.*

The Court explained that excluding § 1405 disputes from arbitration would frustrate the MPPAA's "streamlined process for resolving disputes over withdrawal liability determinations," which was intended to "limit[] dispute-resolution costs and preserv[e] plans' assets."  *Id.* at 374.  It said: "Congress did not intend to create a new, broad category of litigation that would force

benefit plans to spend their assets on court costs and attorney[']s fees . . . . Rather, it chose to require arbitration, with judicial review, to create a more efficient dispute-resolution process." *Id.* Excluding § 1405 disputes from arbitration would have undermined this goal: "A participating employer raising multiple objections to a plan sponsor's withdrawal liability calculation could proceed in a piecemeal fashion, raising the § 1405 limitation issues in federal court while arbitrating the other issues." *Id.* Plans would be forced simultaneously to litigate and arbitrate withdrawal liability disputes, increasing a plan's legal costs and causing "[p]ractice under the Act [to] become impossibly chaotic." *Id.*

These same principles confirm my interpretation of the statutory language at issue here. Permitting any party "adversely affected" by the result of arbitration to initiate a suit to enforce, vacate, or modify an award would up-end the MPPAA's "streamlined" process, while imposing the attendant costs on plan assets. Individual employees dissatisfied with the arbitration could pursue an appeal in court, while other contributing employers—viewing an award as either too high or too low—could do the same. There would be no assurance of finality for the parties involved in arbitrating withdrawal liability, and plans would be faced with the prospect of litigation against parties that did not participate in arbitration. As in *BES Services*, "[p]ractice under the Act would become impossibly chaotic." *BES Servs.*, 469 F.3d at 374. Plaintiff has not identified any reason "why Congress would have countenanced the possibility of such a disjointed, Kafkaesque process," while carefully circumscribing the rest of the dispute resolution process to conserve plan assets. *Id.* I can conceive of none.

To be sure, Penske has cited no authority squarely addressing the interplay between §§ 1401(b)(2) and 1451(a)(1). But, case law cited by plaintiff to support its position is unavailing.

Plaintiff relies on a Seventh Circuit decision, *Central States, Southeast and Southwest Areas Pension Fund v. Safeway, Inc.*, 229 F.3d 605 (7th Cir. 2000), to argue that "a fund bringing suit in its name by a fiduciary is sufficient to confer jurisdiction." Opp. at 5. The Seventh Circuit held that the thirty-day limitations period for filing suit under 29 U.S.C. § 1401(b)(2) is non-jurisdictional. *See* 229 F.3d at 610. Of note, the case caption listed the plan and a single trustee as plaintiffs. Although the issue of statutory standing was not presented, plaintiff asserts that the Seventh Circuit had an independent obligation to dismiss the case for lack of subject matter jurisdiction if Penske's position were valid. *See* Opp. at 4-5.

As I explained, *supra*, the limitation on parties authorized to file suit under 29 U.S.C. § 1401(b)(2) does not implicate a court's subject matter jurisdiction. Thus, contrary to plaintiff's argument, the *Safeway* court did not have an obligation to address 29 U.S.C. § 1401(b)(2) as a jurisdictional issue. Consequently, *Safeway* and similar cases cited by plaintiff do not offer any insight into the question of statutory standing presented here.[3]

Plaintiff also cites *Bay Area Laundry*, *supra*, 522 U.S. 192, in which the Supreme Court addressed the statute of limitations applicable to actions by a multiemployer plan to collect unpaid withdrawal liability, if arbitration has not taken place. *See id.* at 195, 198-99. As plaintiff observes, 29 U.S.C. § 1401(b)(1) specifically empowers a "plan sponsor" to file an action to collect unpaid withdrawal liability in such circumstances. In particular, § 1401(b)(1) states:

> If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

---

[3] The other cases cited by plaintiff in support of this argument did not raise the issue of statutory standing.

Nonetheless, the Supreme Court discussed the suit as if it were an action by a plan fiduciary under 29 U.S.C. § 1451(a)(1). It explained that if an employer failed to pay a demand for withdrawal liability according to the schedule set by the plan's trustees, "the plan may . . . sue to collect the unpaid debt." 522 U.S. at 197. Quoting § 1451(a)(1), the Court then said: "*Plan fiduciaries* 'adversely affected by the act or omission of any party under' the MPPAA are entitled to 'bring an action for appropriate legal or equitable relief, or both.'" 522 U.S. at 197-98 (emphasis added).

According to plaintiff, this statement represents a determination by the Supreme Court that any fiduciary may file suit for collection of withdrawal liability, not just a "plan sponsor," as set forth in § 1401(b)(1). *See* Opp. at 6. By analogy, plaintiff asserts that "plan sponsor," as set forth in § 1401(b)(2), should not preclude a single trustee from filing suit on the Fund's behalf to modify or vacate an arbitration award. *See* Opp. at 7.

Plaintiff's reliance on *Bay Area Laundry* is not persuasive. The Supreme Court addressed a specific, narrow question: "When does the MPPAA's six-year statute of limitations begin to run on a pension fund's action to collect unpaid withdrawal liability?" 522 U.S. at 195. Statutory standing was not an issue, and the statement cited by plaintiff is dicta. Moreover, the record in *Bay Area Laundry* reflects that the plan's board of trustees filed the lawsuit on the plan's behalf. *See* Complaint for Collection of Employer Withdrawal Liability Payments ¶ 1, *Bd. of Trs., Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, No. 93-CV-0489 DLJ (N.D. Cal. Feb. 9, 1993), 1997 WL 33487261, at *6aa ("This is an action *by the Trustees* of an employee pension benefit plan to collect withdrawal liability payments from an employer which has withdrawn from the Plan.") (emphasis added); *see also* Brief for Petitioner, *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*,

552 U.S. 192 (1997) (No. 96-370), 1997 WL 403820, at *8 ("On February 9, 1993, *the Fund's Trustees* filed in district court a 'Complaint for Collection of Employer Withdrawal Liability Payments' against Ferbar.") (Emphasis added).

Further, *Bay Area Laundry* did not involve an appeal from an arbitration award. In fact, arbitration had not yet commenced. *See* 522 U.S. at 198. Thus, the MPPAA's "streamlined process" and its underlying policy considerations were not implicated in that case. *BES Servs.*, *supra*, 469 F.3d at 374. Therefore, the Supreme Court had no occasion to address whether a single trustee has statutory standing under the provisions at issue then or now.

In sum, I am persuaded that only a plan sponsor or an employer that was a party to an arbitration under 29 U.S.C. § 1401(a) may file an action to enforce, vacate, or modify the award under § 1401(b)(2).

2.

Having concluded that statutory standing is governed by § 1401(b)(2), and not § 1451(a)(1), I must now determine if plaintiff "'is a member of the class given authority by a statute to bring suit.'" *CGM*, 664 F.3d at 52 (citation omitted). Because the plan sponsor did not file suit on behalf of the Fund, I find that plaintiff lacks statutory standing.

I need not look beyond the statutory definition of "plan sponsor" to determine whether plaintiff has statutory standing. "'Normally, where the statutory language provides a clear answer, our analysis begins and ends with that language.'" *CGM*, 664 F.3d at 53 (quoting *Wilmington Shipping Co. v. New Eng. Life Ins. Co.*, 496 F.3d 326, 339 (4th Cir. 2007). As noted, the MPPAA unambiguously defines "plan sponsor" as the "joint board of trustees," or, "if the plan has no joint board of trustees, the plan administrator." 29 U.S.C. § 1301(10). It does not state that an individual trustee is the "plan sponsor."

Here, the Fund's Board of Trustees did not file this suit. Rather, suit was filed by Trustee Alexander, on behalf of the Fund. *See* Compl., Caption & ¶ 1. Thus, the Complaint makes clear that plaintiff does not meet the statutory definition of "plan sponsor."

Plaintiff asserts that "the Fund, solely, not the plan sponsor (Joint Board of Trustees), was identified as party to the arbitration." Opp. at 7-8. Therefore, plaintiff argues that the Fund has standing to file suit, *id.* at 7, and a strict application of the statutory scheme will deprive it of its right to appeal from the arbitration award. *Id.* at 8. Plaintiff disregards the fact that the Fund, as a legal entity, "cannot act without the aid of a flesh-and-blood agent." *Martinez v. Beverly Hills Hotel*, 695 F. Supp. 2d 1085, 1097 (C.D. Cal. 2010); *see, e.g.*, *Braswell v. United States*, 487 U.S. 99, 110 (1988) ("Artificial entities such as corporations may act only through their agents."). The question here is not whether the Fund may pursue an appeal from the arbitration, but rather which representatives—a single trustee or the joint board of trustees—is authorized by statute to do so on the Fund's behalf.

In any event, the factual premise of plaintiff's argument is belied by the Notice sent by Penske to initiate arbitration. *See* ECF 12-1. The Notice was addressed to the Fund's "Board of Trustees." *See id.* at 2. It stated that Penske "disputes the plan sponsor's determination of its withdrawal liability and Penske is initiating arbitration hereby under ERISA § 4221 [29 U.S.C. § 1401] and 29 C.F.R. § 4221.1." *Id.* (emphasis added) (internal quotation marks omitted). Throughout the Notice, Penske referenced the withdrawal liability determinations made by "the Fund Trustees" that it sought to arbitrate. The Notice concluded: "[A]n [arbitration] award should be given in favor of Penske and against the Fund Trustees." *Id.* at 14. Thus, the Fund's Board of Trustees was plainly a party to the arbitration with Penske, and can appeal from the arbitration award under § 1401(b)(2).

In a final foray, plaintiff asserts that Trustee Alexander has the authority to bring this action on behalf of the Board pursuant to § 5.6 of the Trust Agreement. *See* Opp. at 8-9. Section 5.6 of the Trust Agreement states:

> The Trustees may, by resolution or by-law or by provisions of this Trust Agreement, allocate fiduciary responsibilities and various administrative duties to committees or sub-committees of the Board of Trustees made up of equal number of Employer and Union Trustees, and they may delegate such responsibilities and duties to other individuals as they may deem appropriate or necessary in their sole discretion and consistent with ERISA.

On this record, plaintiff's argument lacks merit. The Fund's Trust Agreement established a four-member Board of Trustees, with two "union trustees" and two "employer trustees." *See* Trust Agreement §§ 3.1-3.2, 5.1-5.2. "An equal number of trustees are chosen by the participating employers and the participating unions, and so their allegiances are not uniformly against the withdrawing employer." *Keith Fulton & Sons, Inc. v. New England Teamsters & Trucking Indus. Pension*, 762 F.2d 1137, 1142 (1st Cir. 1985).[4] In theory, each representative acts as a check against representatives from the opposing camp. *See Amax Coal*, *supra* n. 5, 453 U.S. at 330 n.13 ("The management-appointed trustee 'represents' the employer only in the sense that he ensures that the union-appointed trustee does not abuse his trust with respect to the funds contributed by the employer.").

According to § 3.15(b) of the Trust Agreement, "Any action taken by the Trustees . . . shall be by affirmative vote of a majority of the votes cast at a meeting." Yet, there is no

---

[4] As defendants note, an equal division of trustees is required by 29 U.S.C. § 186(c)(5)(B), which provides an exemption from the Taft-Hartley Act for employer contributions to an employee trust fund made pursuant to a written agreement if "employees and employers are equally represented in the administration of such fund." *See generally N.L.R.B. v. Amax Coal Co., a Div. of Amax, Inc.*, 453 U.S. 322, 328-338 (1981) (discussing role of board of trustees and equal representation requirement for funds subject to ERISA); *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Va. Pension Fund*, 718 F.2d 628, 640 (4th Cir. 1983). I do not comment on whether a board of trustees' delegation of authority to file this suit would be consistent with ERISA's statutory provisions.

evidence that the Board approved Trustee Alexander to file this suit by the requisite majority vote, or otherwise. Thus, even accepting, *arguendo*, that the Trust Agreement permits the Board of Trustees to designate a single trustee to file suit on the Fund's behalf, there is no basis to infer that the "plan sponsor" initiated this action.

In sum, I conclude that plaintiff lacks statutory standing to bring this suit under 29 U.S.C. § 1401(b)(2).

## Conclusion

For the foregoing reasons, I will grant defendants' Motion to Dismiss, without prejudice, and with leave to amend. Specifically, plaintiff may amend the Complaint provided that the Board of Trustees files suit on behalf of the Fund. Alternatively, if the Board authorized Trustee Alexander to act on its behalf, then plaintiff may amend the Complaint accordingly. A separate Order, consistent with this Memorandum Opinion, follows.


Date: July 25, 2013                                         _____/s/_____
                                                           Ellen Lipton Hollander
                                                           United States District Judge