IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FREIGHT DRIVERS AND<br>HELPERS LOCAL UNION NO. 557<br>PENSION FUND,<br>By its Plan Sponsor, the Joint Board of<br>Trustees<br>   *Plaintiff*,<br><br>v.<br><br>PENSKE LOGISTICS LLC, *et al.*,<br>   *Defendants*. | Civil Action No. ELH-12-2376 |

**MEMORANDUM OPINION**

This is an action under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381-1453. Suit was initially "brought on behalf of the Freight Drivers and Helpers Local Union No. 557 Pension Fund" (the "Fund"), a multiemployer pension plan, "by its Trustee, William Alexander." *See* Complaint, Caption & ¶ 1 (ECF 1). However, after the Court ruled that the Trustee lacked statutory standing to bring an action under 29 U.S.C. § 1401(b)(2), *see* Memorandum Opinion (ECF 13), an "Amended Complaint" was filed on August 7, 2013, ECF 15, also on behalf of the Fund, but this time by "its Plan Sponsor, the Joint Board of Trustees." *See* Am. Compl., Caption & ¶ 1.

Pursuant to 29 U.S.C. § 1401(b)(2), plaintiff seeks to vacate and/or modify an arbitrator's dismissal of the its claim for "withdrawal liability," which it had lodged against two contributing employers, Penske Logistics, LLC ("Penske Logistics") and Penske Truck Leasing Co., LP ("Penske Leasing") (collectively, "Penske"), defendants. Am. Compl. ¶ 1.

Defendants filed a "Motion to Dismiss, or, in the Alternative, Opposition to 'Amended Complaint' Pursuant to Local Rule 105" ("Penske Filing," ECF 16), supported by a memorandum of law ("Memo," ECF 16-1). Penske argues that plaintiff's "Amended Complaint" is procedurally improper because ERISA and MPPAA require plaintiff to submit his filing in the form of a motion to vacate rather than as a complaint. Accordingly, Penske seeks dismissal of the Amended Complaint. Penske also argues that, even if the Amended Complaint is construed as a motion to vacate, it should be denied because it is untimely, unsupported, and without merit.

The Penske Filing was fully briefed,[1] and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will construe the "Amended Complaint" as a motion to vacate, and I will deny it.

## Statutory Background

ERISA provides a "comprehensive and reticulated" statutory framework for the administration and regulation of employee pension plans. *Massachusetts v. Morash*, 490 U.S. 107, 113 (1989). Its regulatory scheme is guided by a specific purpose:

> "[T]o ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in [them] . . . . Congress wanted to guarantee that if a worker has been promised a defined pension benefit upon retirement—and if he has fulfilled whatever conditions are required to obtain a vested benefit—he will actually receive it."

*Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 607 (1993) (quoting *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 214 (1986)) (alterations in *Concrete Pipe*). Among those pension plans subject to ERISA are "multiemployer

---

[1] Plaintiff opposed the motion ("Opposition" or "Opp.," ECF 17), and Penske replied ("Reply," ECF 18).

plans," like the Fund, "to which more than one employer contributes," which are "maintained to fulfill the terms of collective-bargaining agreements." *Concrete Pipe*, 508 U.S. at 606; *see* 29 U.S.C. § 1301(a)(3) (defining "multiemployer plan").

As originally enacted, ERISA generated a peculiar incentive for employers that contributed to multiemployer plans. Specifically, the withdrawal of one employer from a multiemployer plan reduced a plan's "contribution base." *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 374 (4th Cir. 2006). To compensate for the loss, the remaining employers were required to increase their "contribution rate." *Id.* Thus, "[a]s employers withdrew, the rising costs of continued participation in multiemployer plans increased the incentives for further withdrawals." *Id.* This, in turn, jeopardized the financial health of multiemployer plans. *See Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722 (1984).

To reduce the risk of employer withdrawals, Congress amended ERISA through the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. § 1381, *et seq.* Under the MPPAA, an employer that withdraws from a multiemployer plan "incurs 'withdrawal liability' in the form of 'a fixed and certain debt to the pension plan.'" *Concrete Pipe*, 508 U.S. at 609 (quoting *R.A. Gray*, 467 U.S. at 725). The amount is calculated according to various statutory provisions which are not at issue here. *See generally Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 417-19 (1995) (explaining MPPAA's rules for calculating withdrawal liability). Generally speaking, "[a]n employer's withdrawal liability is its 'proportionate share of the plan's unfunded vested benefits.'" *Concrete Pipe*, 508 U.S. at 609 (citing 29 U.S.C §§ 1381, 1391); *accord BES Servs.*, 469 F.3d at 374.

The "plan sponsor" of a multiemployer plan is charged with determining, providing notification of, and collecting an employer's withdrawal liability. *See* 29 U.S.C. §§ 1382, 1399(b); *see also Concrete Pipe*, 508 U.S. at 610. With respect to a multiemployer plan, the "plan sponsor" is defined as the "joint board of trustees" or, "if the plan has no joint board of trustees, the plan administrator." 29 U.S.C. § 1301(10); *see, e.g.*, *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Berbar of Cal., Inc.*, 522 U.S. 192, 197 (1997) (explaining that ERISA "places the calculation burden on the plan's trustees," and that "[t]he trustees must set an installment schedule and demand payment").

An employer may challenge a plan sponsor's determination of withdrawal liability. *See* 29 U.S.C. § 1399(b)(2). Notably, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan" concerning withdrawal liability must be "resolved through arbitration." 29 U.S.C. § 1401(a)(1); *see Concrete Pipe*, 508 U.S. at 611; *BES Servs.*, 469 F.3d at 375. In such an arbitration, any determination made by the plan sponsor as to withdrawal liability is "presumed correct unless the party contesting the determination shows by a preponderance of the evidence that the determination was unreasonable or clearly erroneous." 29 U.S.C. § 1401(a)(3)(A).

Pursuant to 29 U.S.C. § 1401(b)(3), "[a]ny arbitration proceedings under this section shall, to the extent consistent with this subchapter, be conducted in the same manner, subject to the same limitations, carried out with the same powers (including subpoena power), and enforced in United States courts as an arbitration proceeding carried out under Title 9." Title 9 of the United States Code contains the provisions of the Federal Arbitration Act ("FAA").

Judicial review of the arbitrator's decision is available to "any party thereto." 29 U.S.C. § 1401(b)(2). Specifically, 29 U.S.C. § 1401(b)(2), titled, in pertinent part, "civil action subsequent to arbitration award," provides:

> Upon completion of the arbitration proceedings in favor of one of the parties, any party thereto may bring an action, no later than 30 days after the issuance of an arbitrator's award, in an appropriate United States district court in accordance with section 1451 of this title to enforce, vacate, or modify the arbitrator's award.

As indicated, an action under 29 U.S.C. § 1401(b)(2) must be brought "in accordance with" 29 U.S.C. § 1451, which is titled "Civil actions." Section 1451 includes several provisions relevant to filing a lawsuit, such as a jurisdictional provision, *id.* § 1451(c); provisions governing venue and service of process, *id.* § 1451(d), (g); and a statute of limitations, *id.* § 1451(d). It also addresses an employer's failure "to make any withdrawal liability payment within the time prescribed," *id.* § 1451(b), and provides for an award of costs and expenses to the prevailing party. *Id.* § 1451(e).

**Factual Background**

The Fund is an "employee pension benefit plan," as defined in 29 U.S.C. § 1002(2), and a "multiemployer plan," as defined in 29 U.S.C. §§ 1002(37) and 1301(a)(3). Am. Compl. ¶ 4. It is also a "trucking industry fund," pursuant to 29 U.S.C. § 1383, meaning that "substantially all of the contributions required under the plan are made by employers primarily engaged in the long and short haul trucking industry." *See* Am. Compl. ¶ 4.

Penske, a contributing employer, operates "trucking services" and "own[s] subsidiary businesses." *Id.* ¶ 6. On March 19, 1996, Penske acquired Leaseway Motorcar Transport Co. ("Leaseway") as a "wholly owned subsidiary." *Id.* ¶ 7. According to plaintiff, Leaseway was "obligated to contribute to the Fund pursuant to a collective bargaining agreement." *Id.*

5

Thereafter, on an unspecified date, Penske sold Leaseway to Performance Transportation Services, "a wholly owned subsidiary" of Performance Logistics Group. *Id.* ¶ 8.

According to the Amended Complaint, Leaseway experienced two "partial withdrawals" from the Fund, in December 2004 and December 2005, respectively, and a "complete withdrawal" in December 2006. *Id.* ¶¶ 9-11. "[T]here is a partial withdrawal by an employer from a plan on the last day of a plan year if for such plan year (1) there is a 70-percent contribution decline, or (2) there is a partial cessation of the employer's contribution obligation." 29 U.S.C. § 1385. Complete withdrawal occurs when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383.

The Fund and Penske disputed whether Penske was liable for Leaseway's withdrawals, and the parties initiated arbitration pursuant to 29 U.S.C. § 1401. Am. Compl. ¶¶ 13-14. The arbitrations for all three withdrawals were consolidated into a single proceeding. *Id.* ¶ 17. The arbitrator requested briefing from the parties on a "trucking industry exemption" to the assessment of complete withdrawal liability. *Id.* ¶ 18. On July 13, 2012, the arbitrator found the trucking industry exemption applicable and dismissed the Fund's claim against Penske for complete withdrawal liability. *Id.* ¶¶ 19-20.[2]

In the "Amended Complaint," plaintiff alleges that the arbitrator erred in finding that "Penske qualified for the application of the trucking industry exemption," *id.* ¶ 23, and that "no complete withdrawal liability could be assessed against Penske." *Id.* ¶ 24.

---

[2] A copy of the arbitrator's decision—which the parties refer to as the arbitration award—is attached as Exhibit 1 to the Complaint. *See* ECF 1-3 (the "Arbitration Award"). The Arbitration Award did not address the merits of the Fund's claims relating to Leaseway's partial withdrawals. According to the Amended Complaint, the claims are still pending. *See* Am. Compl. ¶ 19.

**Contentions**

Penske raises several objections to the "Amended Complaint." First, Penske argues that an action to modify or vacate an arbitration award "must be initiated by filing a 'motion,' not by filing a complaint . . . ." Memo at 4. Thus, Penske argues, the "Amended Complaint" must be dismissed.

Next, Penske argues that even if the Court treats the "Amended Complaint" as a motion, it should be denied as untimely because it was not filed within 30 days of the arbitrator's final decision. Memo at 6–8.

Penske also argues that even if the "Amended Complaint" is treated as a motion and deemed timely, it does not comply with Local Rule 105, which requires that "[a]ny motion . . . shall be . . . accompanied by a memorandum setting forth the reasoning and authorities in support of it." Memo at 8–9.

Finally, Penske argues that the "Amended Complaint," if treated as a timely motion, must be denied because it fails on its merits, as the "arbitrator's award was legally correct based on the arbitrator's reasoned application of the undisputed facts to the law." Memo at 9.

Plaintiff responds only to Penske's first argument, arguing that it "properly initiated this action via the filing of a complaint . . . ." Opp. at 4. Plaintiff does not address any of Penske's other arguments; instead, plaintiff claims that Penske's Motion is an "impermissible second pre-answer Rule 12 motion" and therefore "should be stricken." Opp. at 4–5.

**Discussion**

1.

The parties dispute whether the proper method of attacking an arbitration award arising under the MPPAA is through a motion or a complaint. The dispute presents a question of

7

statutory interpretation. Statutory interpretation "begin[s] with the text and structure of the statute." *Morgan v. Sebelius,* 694 F.3d 535, 537 (4th Cir. 2012) (citation omitted). When interpreting a statute, a court should "'give the terms their ordinary, contemporary, common meaning, absent an indication Congress intended [the terms] to bear some different import.'" *In re Total Realty Mgmt., LLC,* 706 F.3d 245, 251 (4th Cir. 2013) (quoting *Crespo v. Holder,* 631 F.3d 130, 133 (4th Cir. 2011)). In doing so, a court will "not only look to the language itself, but also 'the specific context in which that language is used, and the broader context of the statute as a whole.'" *Id.* (quoting *Holland v. Big River Minerals Corp.,* 181 F.3d 597, 603 (4th Cir. 1999)).

If the statutory language is ambiguous, it is appropriate to "'turn to other evidence to interpret the meaning of the provision,' interpreting provisions harmoniously, where possible, or by reference to the legislative history, and always with the goal of ascertaining congressional intent." *Johnson v. Zimmer,* 686 F.3d 224, 235 (4th Cir. 2012) (quoting *New Cingular Wireless PCS, LLC v. Finley,* 674 F.3d 225, 249 (4th Cir. 2012)). Additionally "statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calverty Cnty.,* 401 F.3d 274, 280 (4th Cir. 2005).

As noted, the MPPAA provides, 29 U.S.C. § 1401(b)(3): "Any arbitration proceedings under this section shall, to the extent consistent with this subchapter, be conducted in the same manner, subject to the same limitations, carried out with the same powers . . . and enforced in United States courts as an arbitration proceeding carried out under [the FAA]." And, under the FAA, the sole method for challenging an arbitration award is "by serving a motion to vacate." *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986); *see Parsons, Brinckerhoff, Quade & Douglas, Inc. v. Palmetto Bridge Constructors*, 647 F. Supp. 2d 587, 591 (D. Md. 2009); 9

U.S.C. § 6 ("Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions . . . ."). Thus, according to Penske, a party bringing an action to challenge an arbitrator's award under the MPPAA must comply with the FAA's requirement that it file a motion, rather than a complaint.

Plaintiff contends that the provisions of the FAA on which Penske relies do not apply in a case arising under the MPPAA. Plaintiff first points out that, pursuant to § 1401(b)(3), the FAA's procedures govern only "to the extent consistent with this subchapter." Thus, if other provisions within the subchapter provide that a complaint is the proper method to challenge an arbitration award, then the FAA's requirement does not govern. According to plaintiff, this is precisely the case. Plaintiff explains that 29 U.S.C. § 1401(b)(1) provides that any party to arbitration proceedings under the MPPAA may "bring an action, no later than 30 days after the issuance of an arbitrator's award, in an appropriate United States district court *in accordance with section 1451 of this title* to enforce, vacate, or modify the arbitrator's award." *Id.* (emphasis added). Plaintiff posits that because the action must be brought "in accordance with section 1451," then the action must comply with § 1451(g). That section provides, 29 U.S.C. § 1451(g):

> (g) Service of complaint on corporation; intervention by corporation
> A copy of the complaint in any action under this section or section 1401 of this title shall be served upon the corporation by certified mail. The corporation may intervene in any such action.

Plaintiff contends that § 1451(g)'s reference to a "complaint . . . under . . . section 1401" makes clear that a challenge to arbitration proceedings under § 1401 is properly made by filing a complaint, rather than a motion. And, plaintiff continues, because the FAA's "motion" requirement is not consistent with § 1451(g), it does not apply.

In my view, plaintiff grossly over-reads § 1451(g). Section 1451(g) does not state that a party seeking to challenge an arbitration award must or may file a complaint. In fact, it does not

9

purport to speak to the propriety of any method of filing an action. Rather, it is merely a provision about service of process. It provide that *in the event* a complaint is filed, the complaint must be served upon the defendant corporation by certified mail. But, it does not address the predicate question of when a complaint is proper.

To be sure, plaintiff's position would likely prevail if the only type of action described in § 1401 was one to challenge or vacate an arbitration award. If that were the case, § 1451(g)'s reference to a complaint filed under § 1401 would necessarily signify that a complaint was an appropriate way to challenge or vacate an arbitration award. *See, e.g.*, *Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 327 (4th Cir. 2013) ("It is presumed that the legislature intended each portion [of a statute] to be given full effect and did not intend any provision to be mere surplusage." (internal quotation marks omitted)). However, § 1401 also describes another sort of action. It provides that if the plan sponsor has made a demand on an employer and the employer fails to initiate arbitration proceedings, "[t]he plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection" of the amount it demanded. 29 U.S.C. § 1401(b)(1); *see Asbestos Workers Local 24 Pension Fund v. NLG Insulation, Inc.*, 760 F. Supp. 2d 529, 536 (D. Md. 2010). In such a case, the only way to bring an action in federal court is by filing a complaint, as there is no arbitration award to vacate by motion. Thus, the instruction in § 1451(g) regarding the proper way to serve a complaint filed under § 1401 does not compel the conclusion that a complaint is the proper way to challenge or vacate an arbitrator's award under § 1401(b)(2).

Penske's reading of the statute is far more compelling. The statute plainly provides that arbitration proceedings under ERISA should be conducted in accordance with the procedures set forth in the FAA, *see* 29 U.S.C. § 1401(b)(3), and the FAA plainly provides that a party seeking

to vacate an arbitration award must proceed by motion. Although § 1401(b)(3) contains the qualification that the FAA only applies if it is not inconsistent with anything in the MPPAA, plaintiff has not identified any provision in the MPPAA that contradicts the FAA's "motion" requirement. Accordingly, I conclude that a party to an arbitration action under the MPPAA must file a motion, rather than a complaint, to challenge the arbitrator's award.

This conclusion is in accord with the only case the parties have identified that expressly addresses this question in the context of the MPPAA. In *Bright Const., Inc. v. Carpenters Dist. Council of Kansas City Pension Fund*, 2013 WL 1741984, at \*2 (W.D. Mo. Apr. 23, 2013), the court held that an action seeking to vacate an arbitrator's award must "proceed under motions practice," rather than via notice pleading. The court advised that, consistent with motions practice, the party challenging the award "should provide the court with all matters it would like the court to consider in support of the motion to vacate." *Id.* (internal quotation marks omitted).

This conclusion is also consistent with the purpose behind the MPPAA's arbitration requirement. In *Teamsters Pension Trust Fund-Bd. of Trustees of W. Conference v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir. 1987), the court stated, *id.* (internal quotations and citations omitted):

> Congress was dissatisfied with collection procedures that resulted in lengthy, costly and complex litigation; provisions for informal, expeditious resolution of withdrawal liability disputes were at the heart of the MPPAA; and the value of arbitration in fulfilling Congress' intent to provide an efficient, expeditious dispute resolution mechanism lies in initial resort to that mechanism.

Similarly, in *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 374 (4th Cir. 2006), the Fourth Circuit explained that the MPPAA's arbitration requirement ensures a "streamlined process for resolving disputes over withdrawal liability

determinations," and was intended to "limit[] dispute-resolution costs and preserv[e] plans' assets."

The benefits Congress sought to obtain by requiring arbitration would be entirely wasted if a dissatisfied party in the arbitration action could start anew in federal court by filing a complaint. In contrast, requiring that a party challenging an arbitration award do so by motion "further[s] the Act's policy of expedited judicial action because [it prevents] a party who has lost in the arbitration process from filing a new suit in federal court and forcing relitigation of the issues." *Booth v. Hume Pub., Inc.*, 902 F.2d 925, 932 (11th Cir. 1990).

Moreover, the requirement that the civil action be initiated by motion rather than by complaint "is obviously important, for the nature of the proceeding affects the burdens of the various parties as well as the rule of decision to be applied by the district court." *O.R. Sec., Inc. v. Prof'l Planning Associates, Inc.*, 857 F.2d 742, 745 (11th Cir. 1988). If the "application to vacate the award may be brought in the form of a complaint, then the burden of dismissing the complaint would be on the party defending the arbitration award," who would have to file a motion to dismiss and show that "the movant could not prove any facts that would entitle him to relief from the arbitration award." *Id.* In contrast, requiring the party seeking vacatur to file a motion supported by points and authorities properly places the burden on that party and streamlines the judicial process. *See Booth*, 902 F.2d at 932.

In light of the foregoing, I conclude that the proper method by which to challenge an arbitrator's award under the MPPAA is by filing a motion, "accompanied by a memorandum setting forth the reasoning and authorities in support of it," Local Rule 105.1, rather than by filing a complaint. As a result, plaintiff's "Amended Complaint" is an improper filing.

2.

As Penske acknowledges, many courts have declined to elevate form over substance and have treated a filing erroneously titled as a complaint, as a motion to vacate. *See* Memo at 5 (citing *ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc.*, 173 F.3d 493 (4th Cir. 1999)). In keeping with those cases, I will construe the "Amended Complaint" as a motion to vacate. Nevertheless, I will deny the motion.

First, the motion is untimely. The MPPAA requires a motion to vacate to be filed "no later than 30 days after the issuance of an arbitrator's award." 29 U.S.C. § 1401(b)(2). Here, the "Amended Complaint," construed as a motion, was not filed until more than a year after the arbitrator's award. Therefore, it is untimely and must be denied.

Moreover, the "Amended Complaint," construed as a motion, does not contain any reasoning, authorities, or legal argument. Rather, it is in both name and substance a complaint—it contains general allegations about the arbitrator's decision, but does not contain any support for its assertion that the decision was erroneous. Thus, even if I considered the "Amended Complaint" as a motion, I would summarily deny it because it does not comply with Local Rule 105.1, which requires that motions "be accompanied by a memorandum setting forth the reasoning and authorities in support of it."

As noted, plaintiff does not offer any response to these concerns, nor does it respond to Penske's arguments about the merits of the arbitrator's decision. In effect, plaintiff has abandoned a challenge to them. *See Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*, 166 F. Supp. 2d 432, 440 (D. Md. 2001) ("Plaintiffs appear to concede this point, as they have failed to respond to this argument."); *McKeel v. United States*, 178 F. Supp. 2d 493, 504 (D. Md. 2001) ("Plaintiff appears to concede this point, as he has failed to respond to the government's

argument on this point."); *cf. Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of claim).

Instead, plaintiff argues that Penske's filing is an impermissible second pre-answer Rule 12 motion, and therefore should be stricken. Opp. at 4–5. Rule 12(g)(2) provides that, with exceptions not relevant here, "a party that makes a motion [under Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." According to plaintiff, Penske's Motion "is its second pre-answer Rule 12 motion. . . . Therefore, the instant motion violates Rule 12(g)(2)." Opp. at 4–5.

Plaintiff's argument fails for the reasons already discussed. In order for the "Amended Complaint" to be properly before the Court, it must be treated as a motion. If it is treated as a motion, then the Penske Filing is not a Rule 12 motion at all, but rather is an opposition brief to that motion. Indeed, Penske titled its filing as both a motion to dismiss and, in the alternative, an "Opposition to 'Amended Complaint.'" Because the Penske Filing is not a Rule 12 motion, it is not subject to Rule 12(g)(2) and is therefore not an improper second pre-answer Ruler 12 motion.

**Conclusion**

Plaintiff's "Amended Complaint" is procedurally improper. But, even if construed as a motion to vacate, it is untimely, noncompliant with Local Rule 105.1, and wholly devoid of support. Moreover, it concedes several of Penske's arguments. I will construe the "Amended Complaint" as a motion to vacate, and I will deny the motion, with prejudice. An Order follows.

Date: February 7, 2014                              /s/
                                                    Ellen Lipton Hollander
                                                    United States District Judge