IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| FREIGHT DRIVERS AND HELPERS LOCAL UNION NO. 557 PENSION FUND, by its Plan Sponsor, The Joint Board of Trustees, | * * * * * * * | |
| v. | * * * | Civil No. JFM-12-2376 |
| PENSKE LOGISTICS LLC, *et al.* | * * * | |
|  | ******** | |

## MEMORANDUM

This action arises under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381 *et seq.* Plaintiff Freight Drivers and Helpers Local Union No. 557 Pension Fund (the "Fund") seeks to vacate an arbitration order dismissing its claim for the imposition of withdrawal liability against defendants Penske Logistics LLC and Penske Truck Leasing Co., L.P. (collectively, "Penske"). Now pending are the Fund's motion for summary judgment (ECF No. 44), and Penske's cross-motion for summary judgment. (ECF No. 45). The motions are fully briefed, and no oral argument is necessary. *See* Local R. 105.6. For the reasons set forth below, the Fund's motion is denied, and Penske's cross-motion is granted.

## BACKGROUND

The Fund, a multiemployer pension plan, is a "trucking industry fund" under 29 U.S.C. § 1383(d), meaning that "substantially all of the contributions required under the plan are made by employers primarily engaged in the long and short haul trucking industry." Penske Logistics

1

LLC and Penske Truck Leasing Co., L.P. are out-of-state businesses whose operations include trucking services and owning subsidiary businesses.

For some time, Leaseway Motorcar Transport Company ("Leaseway")—not a party to this case—was obligated by a collective bargaining agreement to contribute to the Fund, and it did so.  In 1996, Leaseway became a wholly owned subsidiary of Penske Truck Leasing, but in 2004, Penske Truck Leasing transferred ownership of Leaseway to a third party, Performance Transportation Company ("PLG").  Two years later, Leaseway, PLG, and various affiliates filed for relief under Chapter 11 of the United States Bankruptcy Code.  (ECF No. 1, Ex. 1, p. 4).  Leaseway subsequently ceased making contributions to the Fund.  *See* 29 U.S.C. § 1383(a).  The Fund responded by assessing complete withdrawal liability against Penske.  (*Id.*, p. 24).  Penske disputed that it was responsible for Leaseway's withdrawal liability, and the parties submitted the dispute to arbitration pursuant to the MPPAA.

In its July 13, 2012 order, the arbitrator dismissed the Fund's demand against Penske.  The arbitrator reasoned that the trucking industry exemption to the assessment of complete withdrawal liability applied, and so Penske was not liable for the withdrawal.  (*Id.*, p. 36-42).  The Fund then filed a civil action in this court on August 9, 2012, seeking review of the arbitrator's ruling.  (ECF No. 1).  After the Fund was permitted to file an amended complaint, Penske filed a motion to dismiss on the basis that filing a complaint was not the proper method to obtain review of an MPPAA arbitration order.  The court agreed that the Fund's amended complaint was procedurally improper and dismissed the case.  (ECF Nos. 19, 20).  The court denied the Fund's motion for reconsideration, and the Fund appealed to the Fourth Circuit.  The Fourth Circuit reversed, holding that the Fund's amended complaint was procedurally proper,

2

and remanded the case for further proceedings.  *See* ECF No. 30; *Freight Drivers & Helpers Local Union No. 557 Pension Fund v. Penske Logistics LLC*, 784 F.3d 210, 211 (4th Cir. 2015).

Now before this court are the parties' respective motions for summary judgment.  (ECF Nos. 44, 45).  They dispute whether the arbitrator correctly determined that Penske met the requirements of the trucking industry exemption, and thus whether Penske can be held responsible for Leaseway's cessation of contributions to the Fund.

## STANDARD OF REVIEW

In reviewing a case brought under the MPPAA, the district court must accept as correct the arbitrator's findings of fact, which may be rebutted only by a clear preponderance of the evidence.  *Republic Indus., Inc. v. Teamsters Joint Council No. 83 of Virginia Pension Fund*, 718 F.2d 628, 641 (4th Cir. 1983); *see also* 29 U.S.C. § 1401(c) (creating a presumption of correctness of the arbitrator's findings of fact).  The arbitrator's conclusions of law, however, are reviewed *de novo*.  *Trustees of the Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1038 (11th Cir. 2004).

Federal Rule of Civil Procedure 56, which governs summary judgment motions, provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party."  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citation omitted).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id.*  (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson*, 477 U.S. at

247-48. When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court must also "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks and citation omitted).

## ANALYSIS

The issue before the court is whether the arbitrator correctly determined that the trucking industry exception applies in this case. Although the Fund offers several reasons the arbitrator erred in so concluding, none are persuasive.

Congress enacted the MPPAA to protect multiemployer pension plans: the statute discourages employers from withdrawing from such plans, and thus leaving them with unfunded liabilities. *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720-22 (1984). Accordingly, when a contributing employer withdraws from a multiemployer pension plan, the MPPAA provides that the employer owes withdrawal liability in the amount of its share of the plan's vested but unfunded benefits. *See* 29 U.S.C. §§ 1381, 1383(a); *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 609 (1993). There are a number of exceptions to this rule, however, including one for withdrawals from plans that receive contributions primarily from employers in the trucking industry. *See id.* § 1383(d). For this so-called "trucking industry" exception to apply, the employer must have "an obligation to contribute" to a trucking industry plan, but does not "continue to perform work within the jurisdiction of the plan." *Id.* § 1383(d)(1).

When these preliminary requirements are met, a withdrawal occurs—and withdrawal liability is thereby incurred—only if:

> (A) an employer permanently ceases to have an obligation to contribute under the plan or permanently ceases all covered operations under the plan, and
> (B) either—
>> (i) the [Pension Benefit Guaranty Corporation ("PBGC")] determines that the plan has suffered substantial damage to its contribution base as a result of such cessation, or
>> (ii) the employer fails to furnish a bond issued by a corporate surety company . . . or an amount held in escrow by a bank or similar financial institution satisfactory to the plan, in an amount equal to 50 percent of the withdrawal liability of the employer.

*Id.* § 1383(d)(3). Subsequently, if the employer furnishes the bond or escrow, and the PBGC determines that the employers cessation "has resulted in substantial damage to the contribution base of the plan" within sixty months of the alleged cessation, the bond or escrow will be paid to the plan. *Id*. § 1383(d)(4). If, however, the PBGC determines that the employer has no further withdrawal liability (either because it determines that the contribution base of the plan did not suffer substantial damage because of the cessation or because sixty months has already passed), the bond will be cancelled or the escrow refunded. *Id*. § 1383(d)(5).

The Fund's first argument is that the trucking industry exception cannot apply because the bond required under § 1383(d) could only have been provided by Leaseway—and not by Penske, which did post the bond. This argument was waived, however, because the Fund did not raise it before the arbitrator. *See Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 375 (4th Cir. 2006) ("the MPPAA requires arbitration in the first instance for *any dispute* concerning a determination of withdrawal liability, whether . . . legal or factual," and "[f]ailure to follow this specified process will lead to dismissal of the federal action on the basis of waiver.") (emphasis in original). Even if the argument were not waived, the arbitrator's finding of fact that "[t]here was no dispute that the bond requirement was met by the

5

Employer," (ECF No. 1, Ex. 1, p. 37), would be rebuttable "only by a clear preponderance of the evidence." 29 U.S.C. § 1401(c). The Fund has not made this showing, nor has it attempted to do so. Indeed, the Fund apparently concedes the validity of Penske's bond in its papers, as it failed to respond to any of Penske's arguments on this issue in its briefing. *See Rao v. Era Alaska Airlines*, 22 F. Supp.3d 529, 540 (D. Md. 2014); *see also Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997). For all of these reasons, the Fund's challenge to the validity of Penske's bond under the trucking industry rule must fail.

Next, the Fund argues that the arbitrator incorrectly interpreted ERISA § 4203(d), which states that for the trucking industry exception to apply, the employer cannot "continue to perform work within the jurisdiction of the plan." According to the Fund, "jurisdiction of the plan" means geographic "jurisdiction of the plan," and because Penske continues to perform work within the plan's geographic jurisdiction, the exception cannot apply. I disagree. The Fund points to no statutory language or other authority that supports its reading of that provision. Section 4203(d) itself does not use "geography" to modify "jurisdiction of the plan," or otherwise give any indication that geography is a component of what constitutes the plan's "jurisdiction" under that provision. Indeed, as Penske points out, when Congress intended that geography be a factor with respect to a multiemployer pension plan under ERISA, it expressly stated as much. *See, e.g.*, 29 U.S.C. § 1053(a)(3)(B) (providing for the suspension of benefits in certain situations, "in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced."); 29 U.S.C. § 1183 (providing that a health benefit plan cannot "deny an employer whose employees are covered under such a plan continued access to the same or different coverage under the terms of such a plan, other than . . . because the plan is ceasing to offer any coverage in a geographic area."). Finally, even if

§4203(d) did mean "geographic jurisdiction of the plan," the Fund has not articulated any basis for determining what its "geographic jurisdiction" for the purposes of that provision would be.

Nor is the court persuaded by the Fund's contention that the arbitrator failed to give *Chevron* deference to the PBGC's "interpretation of the statute with regard to performance of work in the jurisdiction of the plan." (ECF No. 44, p. 14). The Fund cites no regulation or opinion letter issued by the PBGC interpreting the meaning of "work within the jurisdiction of the plan" under § 4203(d), and the court is aware of none. Moreover, to the extent the Fund argues that the PBGC's December 15, 2011 letter is entitled to deference, that assertion is mistaken. Nowhere in the December 15 letter did the PBGC interpret or offer guidance about what constitutes performing such work. To the contrary, the letter determines that the arbitrator—not the PBGC—was to decide that issue: it explicitly states that whether Penske "continued to perform work within the jurisdiction of the plan as to make the trucking industry rule inapplicable . . . [is a] question[] to be resolved through arbitration." (ECF No. 1, Ex. 1, p. 16). Thus, contrary to the Fund's arguments, the PBGC did not interpret what constitutes work "within the jurisdiction of the plan" under § 4203(d), let alone make any determination regarding whether Penske did so. The Fund can identify no PBGC interpretation of the provision at issue— in the December 15 letter or otherwise—that is entitled to *Chevron* deference.[1]

## CONCLUSION

For the reasons stated above, the arbitrator correctly determined that the trucking industry exception applies in this case, and thus that Penske cannot be held responsible for Leaseway's

---

[1] Moreover, even if the December 15 letter *did* interpret what constitutes performing such work, agency interpretations are entitled to *Chevron* deference only when they carry the force of law. *See Christensen v. Harris County*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference."). There is no dispute that the letter lacked the force of law.

complete withdrawal on that basis.  The Fund's motion for summary judgment is denied, and Penske's cross-motion for summary judgment is granted.  A separate Order follows.


__6/15/2016_____             ___/s/_____
Date                                                                  J. Frederick Motz
                                                                      United States District Judge